UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-054-1 (PJS/HB) (1)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **PLEA AGREEMENT AND** |
| ) | **SENTENCING STIPULATIONS** |
| v. ) | |
| ) | |
| IRINA VOROTINOV, ) | |
| ) | |
| Defendant. ) | |

The United States of America and Irina Vorotinov (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with defrauding Mutual of Omaha Insurance Company ("Mutual of Omaha") of over $2 million through the use of the United States mails, in violation of Title 18, United States Code, Section 1341.

The defendant also agrees to plead guilty to Count 2 of the Indictment, which charges the defendant with engaging in a monetary transaction in criminally derived property, in violation of Title 18, United States Code, Section 1957.

SCANNED
MAY 1 ~~7~~ 2016
U.S. DISTRICT COURT, MPLS

2. **Government's Covenant**. In return for her plea of guilty to Counts 1 and 2 of the Indictment, the government will move the Court to dismiss Count 3 of the Indictment against the defendant at the time of sentencing.

3. **Factual Basis**. The defendant agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt:

As to Count 1:

a. In March 2010, the defendant's codefendant and former husband, Igor Vorotinov ("Igor"), obtained a $2 million life insurance policy on his own life from Mutual of Omaha (the "Life Insurance Policy") which designated the defendant as the primary beneficiary.

b. On November 7, 2011, the defendant submitted a claim for death benefits against the Life Insurance Policy, claiming that Igor had died in the Republic of Moldova on October 1, 2011. However, Igor had not died on October 1, 2011.

c. On March 23, 2012, the defendant caused Mutual of Omaha to mail a check payable to the defendant in the amount of $2,048,414.09 (hereinafter, the "Proceeds Check") to her home in Maple Grove, Minnesota. The defendant knew that Igor was not dead when she caused Mutual of Omaha to mail the Proceeds Check to her.

The defendant acknowledges that her conduct violated Title 18, United States Code, Section 1341.

As to Count 2:

a. On March 29, 2012, the defendant endorsed the Proceeds Check to a third party (the "Third Party") and then caused the Third Party to deposit the Proceeds Check into a US Bank account controlled by the Third Party (the "Third Party Account").

b. On April 26, 2012, in the State of Minnesota, the defendant caused the Third Party to engage in a monetary transaction in criminally derived property of a value greater than $10,000 which was derived from specified unlawful activity, namely, the scheme to defraud Mutual of Omaha, by and through US Bank, a financial institution affecting interstate and foreign commerce. Specifically, the defendant caused the Third Party to transfer $1.5 million, which she knew were the proceeds of the fraud scheme, from the Third Party Account into another account at US Bank in the name of the defendant's son, Alkon Vorotinov.

The defendant acknowledges that her conduct violated Title 18, United States Code, Section 1957.

4. **Statutory Penalties**. The parties agree that Count 1 of the Indictment, a class C felony, carries the following maximum statutory penalties:

    a. a maximum of 20 years of imprisonment;

    b. a supervised release term of not more than 3 years;

    c. a criminal fine of up to $250,000, or twice the gross gain or loss from the offense;

    d. a mandatory special assessment of $100;

  e. if a term of imprisonment is not imposed, a term of probation of up to five years; and

  f. the costs of prosecution (as defined in 28 U.S.C. §§ 1918(b) and 1920).

The parties agree that Count 2 of the Indictment, a class C felony, carries the following statutory penalties:

  a. a maximum of 10 years of imprisonment;

  b. a supervised release term of not more than 3 years;

  c. a criminal fine of up to $250,000, or twice the amount of the criminally derived property involved in the monetary transaction;

  d. a mandatory special assessment of $100

  e. if a term of imprisonment is not imposed, a term of probation of up to five years; and

  f. the costs of prosecution (as defined in 28 U.S.C. §§ 1918(b) and 1920).

5. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

6. **Guideline Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will

consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

As to Count 1:

    a.    <u>Base Offense Level</u>. The parties agree that the base offense level for Count 1 is 7 pursuant to U.S.S.G. § 2B1.1(a)(1).

    b.    <u>Specific Offense Characteristics</u>. The parties agree that the actual loss occasioned by the offense of conviction is $2,048,414.09, resulting in a 16-level increase pursuant to U.S.S.G. § 2B1.1(b)(I).

    c.    <u>Chapter 3 Adjustments</u>. The parties agree that no Chapter 3 adjustments apply to this case.

    d.    <u>Stipulated Offense Level</u>. Based upon the foregoing, the parties stipulate and agree that the offense level for Count 1 will be 23.

As to Count 2:

    e.    <u>Base Offense Level</u>. The parties agree that the defendant committed the underlying offense from which the laundered funds were derived, and that the offense level for that offense is 23 (as stipulated above). Thus, the parties agree that the base offense level for Count 2 is 23 pursuant to U.S.S.G. § 2S1.1(a)(1).

    f.    <u>Specific Offense Characteristics</u>. The parties agree that the offense level must be increased by 1 level because the defendant will have been convicted under 18 U.S.C. § 1957 pursuant to U.S.S.G. § 2S1.1(b)(2)(A). The parties therefore agree that the offense level for Count 2 is 24.

Overall Offense Level:

    g.    <u>Combined Offense Level</u>. The parties agree that Count 1 and Count 2 should be grouped because the offense level for both groups is determined largely on the basis of the total amount of harm or loss

pursuant to U.S.S.G. § 3D1.2(d). The parties therefore agree that the combined offense level is the offense level for the most serious of the counts comprising the group pursuant to U.S.S.G. § 3D1.3(a). Therefore, the parties agree that the overall offense level is 24.

h. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 3-level reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the plea and sentencing hearings, (ii) the defendant cooperates with the Probation Office in the pre-sentence investigation, and (iii) the defendant commits no further acts inconsistent with acceptance of responsibility. (U.S.S.G. §3E1.1). After the 3-level reduction, the defendant's adjusted offense level will be 21.

i. Criminal History Category. Based on information available at this time, the parties believe that the defendant's criminal history category is I. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. If the defendant turns out to be in a higher criminal history category than category I, she will not be allowed to withdraw from this plea agreement.

j. Guideline Range. The advisory guidelines range will be 37-46 months.

k. Fine Range. The fine range will be $7,500 to $75,000 (U.S.S.G. § 5E1.2(c)).

l. Supervised Release. The Sentencing Guidelines will require a term of supervised release of at least 1 year but not more than 3 years (U.S.S.G. § 5D1.2(a)(2)).

  m. **Probation.** If no sentence of imprisonment is imposed, the Sentencing Guidelines require a term of probation of at least 1 year but not more than to 5 years. USSG § 5B1.2(a)(1).

7. **Parties' Positions on Sentencing.** The government agrees that it will not argue for a sentence of more than 37 months, unless the defendant commits further crimes while awaiting sentencing.

For her part, the defendant is free to make a motion for downward departure or a downward variance, and to argue for a sentence of probation under the factors enumerated in Title 18, United States Code, Section 3553(a).

8. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart or vary from the applicable guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9. **Special Assessments.** The Guidelines require payment of a special assessment in the amount of $200 for the offenses of conviction in this case. The defendant agrees to pay the special assessment prior to sentencing.

10. **Restitution**. The defendant agrees that the Court will order her to pay $2,048,414.09 in restitution to Mutual of Omaha, and that her liability will be joint and several with other defendants ordered to pay restitution in connection with this case.

11. **Complete Agreement**. This Plea Agreement, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.

Date: 5/16/16

ANDREW M. LUGER
United States Attorney

BY: DAVID J. MACLAUGHLIN
Assistant U.S. Attorney
Attorney ID No. 0211849

Date: 5/16/2016

IRINA VOROTINOV
Defendant

Date: 5/16/16

MATTHEW D. FORSGREN
Counsel for Defendant