UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 15-CR-0054(1) (PJS/HB) |
| Plaintiff, | |
| v. | ORDER |
| IRINA VOROTINOV, | |
| Defendant. | |

---

Defendant Irina Vorotinov pleaded guilty to mail fraud and engaging in a monetary transaction in criminally derived property. ECF No. 86. She was sentenced to 37 months in prison and two years of supervised release and ordered to pay $2,056,554.09 in restitution. *Id.* Vorotinov was released from prison in August 2019 and began serving her term of supervised release.

On September 14, 2021, the Court held a revocation hearing at which Vorotinov admitted violating the conditions of her supervised release by committing another crime—specifically, the crime of structuring transactions to evade federal reporting requirements. ECF No. 217. Vorotinov further admitted that she had violated her supervised-release conditions by failing to truthfully answer her probation officer's questions, failing to provide the officer with requested financial information, and failing to promptly notify the officer of material changes in her economic circumstances that

might affect her ability to pay restitution.  *Id.*  The Court revoked her term of supervised

release and sentenced her to 12 months in prison.  *Id.*

  This matter is before the Court on Vorotinov's motion for a sentence reduction

under 18 U.S.C. § 3582(c)(1)(A).[1]  For the reasons that follow, Vorotinov's motion is

denied.

  Under § 3582(c)(1)(A)(i), a court may reduce a defendant's term of imprisonment

if, "after considering the factors set forth in section 3553(a) to the extent that they are

applicable," the court finds that "extraordinary and compelling reasons warrant such a

reduction" and "that such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission."

  The Sentencing Commission has issued U.S.S.G. § 1B1.13, a policy statement that

governs motions under § 3582(c)(1)(A).  Because § 1B1.13 was issued when the Bureau

of Prisons ("BOP") had the sole authority to bring motions for release under

§ 3582(c)(1)(A), the guideline by its terms is limited to motions filed by the BOP.  As a

_____

[1]Section 3582(c)(1)(A) requires that, before filing a motion for a sentence
reduction, a defendant must first submit a request to the warden and either "fully
exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a
motion" or wait for 30 days to lapse, whichever is earlier.  Because Vorotinov was
initially confined in the Sherburne County Jail, she submitted her request to the
Sherburne County Sheriff and waited 30 days to file this motion.  Since then, she has
been transferred to FCI Waseca.  In light of these circumstances, the government has
waived any requirement that she submit a request to the warden at FCI Waseca.  ECF
No. 223 at 2.

result, a number of circuits have held that § 1B1.13 applies only to motions filed by the BOP, and not to motions filed by defendants on their own behalf.  *See, e.g., United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020).

The Eighth Circuit has not resolved this issue, but the court has recently clarified that although district courts should not treat § 1B1.13 as binding, they may not ignore it altogether.  *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021).  This holding accords with this Court's approach of affording deference to § 1B1.13's definition of "extraordinary and compelling."  *See United States v. Logan*, 532 F. Supp. 3d 725, 730 (D. Minn. 2021).  Accordingly, while the Court recognizes that it has the discretion to grant a sentence reduction even in circumstances that do not comport with the terms of § 1B1.13, the Court continues to treat § 1B1.13 as a useful guide in determining whether and how to exercise its discretion.

Vorotinov contends that her various health conditions put her at heightened risk from the COVID-19 pandemic.[2]  In particular, Vorotinov claims that she has breast cancer, has had two heart attacks, and suffers from shortness of breath, lung damage, and severe depression.  Vorotinov has not submitted any medical records to support

---

[2]Vorotinov also requests a sentence reduction on the basis that her time in Sherburne County Jail constituted "hard time."  Serving a portion of a sentence in a county jail while awaiting placement in a BOP facility is extremely common and does not constitute an extraordinary and compelling circumstance that warrants a sentence reduction.

her claims, and the government points out that medical records from her previous time in custody (as well as more recent records from Sherburne County) do not fully support those claims.  For example, while the records indicate that Vorotinov has a history of cancer, they do not indicate that she presently has cancer.  *See* ECF No. 226 at 4 ("Health Summary" from Sherburne County Jail listing "Current Problems," including "History of cancer").[3]  Moreover, the risk that Vorotinov faces from COVID-19 is substantially mitigated by the fact that she is vaccinated.  *Id.* at 6.

Even assuming that Vorotinov's medical conditions constitute an extraordinary and compelling reason under § 3582(c)(1)(A)(i), the Court declines to grant her motion. First, the Court already considered and rejected these same arguments at the September 14, 2021 revocation hearing and nothing appears to have changed.  While the Court recognizes that it is not precluded from considering circumstances that existed at the time of sentencing, *see* U.S.S.G. § 1B1.13 n.2, the Court generally gives little weight to such circumstances, *see Logan*, 532 F. Supp. 3d at 731.  Here, as Vorotinov's sentencing was just three months ago, the Court sees no reason to give these factors any weight.

Setting that aside, the Court's consideration of the relevant § 3553(a) factors leads it to deny Vorotinov's motion notwithstanding the evidence of her medical conditions. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring consideration of § 3553(a) factors).  Vorotinov's

---

[3]The Court cites to the page numbers generating by the Court's electronic docketing system rather than to the document's internal pagination.

underlying offense was brazen: She conspired with her former husband to fake his death and claim $2 million in life-insurance proceeds. As the Court noted at Vorotinov's sentencing, "a great deal of planning went into the scheme. . . . [A]t a minimum, the fraud involved acquiring a fresh corpse, staging the discovery of that corpse, and bribing at least two government officials." ECF No. 158 at 8. Vorotinov also traveled to Moldova to (mis)identify the corpse, obtained a death certificate, brought the cremated remains of an unknown person back to the United States for burial, and held a funeral for her husband, knowing full well that he was still alive.

As noted, Vorotinov was ordered to pay over $2 million in restitution. To facilitate the recovery of this sum, the Court ordered her, as part of her conditions of supervised release, to promptly notify the probation officer of any material change in her economic circumstances and to provide any requested financial information. After her release from prison, Vorotinov began violating these conditions and committing crimes in order to hide assets. She opened multiple bank accounts that collectively received hundreds of thousands of dollars in electronic transfers and then withdrew much or all of the money in cash in amounts of $10,000 or less. She also repeatedly purchased BitCoin with cash, with the transactions structured in such a way as to avoid reporting requirements. In her February 2021 financial disclosures to the probation

officer, she did not disclose the bank accounts or any of these transactions and claimed to be unemployed.

Vorotinov has consistently denied that she benefitted from the insurance-fraud scheme and claims that, in these recent financial transactions, she was simply acting as a broker with other people's money.  Although there is no direct proof that these transactions involved the illegal proceeds of her insurance fraud, her explanation for these transactions is preposterous, and that is at least circumstantial evidence that she continues to control some or all of the $2 million that she and her husband stole.  If Vorotinov's actions were legitimate, then there would be no reason for her to structure the transactions to avoid reporting requirements, there would be no reason for Vorotinov to hide those transactions from the probation officer, and there would be no reason for her to claim to be unemployed.

At the very least, therefore, her conduct demonstrates her intent to avoid paying her restitution obligation.  As her underlying crime was primarily motivated by greed, the Court takes this conduct very seriously and sees it as a perpetuation of the harm from her original offense as well as strong evidence that she is unrepentant and poses a high risk of recidivism.  Under these circumstances, no reduction is warranted. Accordingly, Vorotinov's motion is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motion for compassionate release [ECF

Nos. 219–222] is DENIED.

Dated: December 9, 2021                     s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge